## Olga O. Woodward *v.* Washington County Board of Elections

Argued May 5, 1971, before President Judge Bow-
MAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MANDERINO, MENCER and ROGERS.

*William C. Porter*, Assistant County Solicitor, with
him *A. V. Campano*, County Solicitor, for appellant.

Oliver N. Hormell, with him Hormell, Tempest, Simmons, Bigi & Melenyzer, for appellee.

Milton D. Rosenberg, with him W. Bryan Pizzi, II, and Bloom, Bloom, Rosenberg & Bloom, for John Mazza, intervenor.

OPINION BY JUDGE KRAMER, May 17, 1971:

This case involves an appeal by the Washington County Board of Election (Board) from an Opinion and Order dated April 23, 1971, of the Court of Common Pleas of Washington County, directing the appellant to receive, *nunc pro tunc*, the nomination petitions of Olga O. Woodward,* appellee, for the office of Recorder of Deeds, for that county, and directing the appellant to print such petitioners' names on the Primary Election ballot for a vacancy in that office. The date for the Primary Election involved is May 18, 1971.

For purposes of clarity, it is necessary to set forth the pertinent facts in this case. John D. Woodward, deceased husband of appellee, was elected to the office of Recorder of Deeds in 1969 for a four-year term ending on the first Monday of January, 1974. He died May 24, 1970, thereby creating a vacancy. On December 1, 1970, the Governor appointed John Mazza** (intervenor—herein referred to as Mazza)*** to the vacancy in the office under a duly executed commission for a term to expire on the first Monday of Janu-

---

* The lower court also directed the appellant to accept the petitions of any other person who may have presented such petitions, and the court named in a footnote, one, "Tom Cox".

** At the time of his appointment, Mazza was a minority county commissioner for Washington County, and because the three county commissioners are the County Board of Election, he was disqualified from participating in the determination of the Board in this case.

*** Although Mazza did not participate in the court action below, he was permitted to intervene in this appeal.

ary, 1974. Mazza took his oath of office on January 2, 1971.

Because of the term set forth in the commission, the Board did not advertise (on February 25, 1971, as required by statute, 25 P.S. 2866) a vacancy in the office of Recorder of Deeds prior to the time statutorily set for the filing of nomination petitions. It is the statutory duty of the Board to determine the elective county offices to be filled by the election process. On March 9, 1971 (the last day for filing nomination petitions for the 1971 primary election) at 1:30 p.m., appellee presented to the Clerk of the Board five nomination petitions, with sufficient signatures, properly executed and acknowledged, together with the proper filing fee, to have her name printed on the 1971 Democratic Party Primary ballot for the office of Recorder of Deeds. The filing of these petitions was refused on the ground that no vacancy for the office existed.

Whereupon the appellee immediately protested and filed, on March 9, 1971, a complaint in mandamus (together with a separate and additional affidavit) praying for a judgment against the Board directing it to accept her nomination petitions, *nunc pro tunc*, as of March 9, 1971.

The Board filed its answer on March 22, 1971, and a hearing was held April 19, 1971, resulting in the Opinion and Order dated April 23, 1971, from which this appeal arises. This Court granted a supersedeas on April 26, 1971, as amended April 27, 1971 (which in effect permitted the lower court to direct the filing of the nomination petitions and the printing of ballots under bond and subject to the final disposition of this case). Argument was held on May 5, 1971, and on May 6, 1971, an order of this Court was issued reversing the order of the court below, dismissing the complaint in mandamus and entering judgment in favor of the Board. Appellee on May 7, 1971, applied for allocatur

in the Supreme Court, and we now file this opinion in support of our orders.

We must first rule on two preliminary matters presented by the appellee: (a) she has simultaneously filed a motion to quash the appeal based upon the argument that the appeal should have been filed in the Pennsylvania Superior Court and therefore this Court does not have jurisdiction, and (b) she also filed a motion to dissolve the supersedeas on the ground that the petition for supersedeas did not comply with the rules of this Court, and also on the same grounds that this Court does not have jurisdiction as mentioned in (a) above.

Both of these motions must be denied. First, the petition for supersedeas was filed at the same time as the appeal was filed. The determination of the exigency of the case was within the discretion of the judge issuing the supersedeas order on whether there need be prior notice to other counsel of record. There is no merit to appellee's argument on the alleged failure to follow this Court's rules. Next, this Court does have jurisdiction to entertain this appeal under Section 402(4)* of the Appellate Court Jurisdiction Act of

---

* "Section 402. Appeals from courts of common pleas—the Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in any of the following cases, except such classes of appeals as are by section 202 of this act within the exclusive jurisdiction of the Supreme Court: (4) All actions or proceedings arising under any county, institution district, city, borough, incorporated town, township, public school, planning or zoning code or under which a municipality or other political subdivision or municipality authority may be formed or incorporated or where is drawn in question the application, interpretation or enforcement of (i) any act of the General Assembly regulating the affairs of political subdivisions, municipality and other local authorities or other public corporation or of the officers, employes or agents thereof, acting in their official capacity, or (ii) any home rule charter or local ordinance or resolution; . . ."

1970, Act of July 31, 1970, P. L.     (Act No. 223) 17 P.S. 211.402(4). Appellee argues that Section 976 of the Pennsylvania Election Code, Act of June 3, 1937 P. L. 1333, as amended, 25 P.S. 2936, providing for appeals to the Pennsylvania Superior Court, was not specifically repealed by the Appellate Court Jurisdiction Act, *supra,* in Section 508(a)(57); but appellee fails to note Section 509(f) of the Appellate Court Jurisdiction Act, which reads: "Section 509. Repeals and savings provisions—(f) All other parts of those acts which are specified in this section or in section 508 of this act and all other acts and parts of acts are hereby repealed insofar as inconsistent with this act."

The sole remaining issue presented to this Court is whether the commission issued to John Mazza is to terminate on the first Monday of January, 1972, or January, 1974, under the laws of this Commonwealth. This issue must be determined first, before we can determine if the Board properly refused to accept appellee's nomination petition. We hold that the commission is to terminate on the first Monday in January, 1974, and therefore the Board acted properly.

Article IX, Section 4 of the Pennsylvania Constitution, which is contained in the local government provisions of that Constitution, in pertinent part reads as follows: "County officers shall consist of commissioners, controllers or auditors, district attorneys, public defenders, treasurers, sheriffs, registers of wills, *recorders of deeds,* prothonotaries, clerks of the courts, and such others as may from time to time be provided by law. County officers, except for public defenders who shall be appointed as shall be provided by law, shall be elected at the municipal elections and shall hold their offices for the term of four years, beginning on the first Monday of January next after their election and until their successors shall be duly qualified; *all vacancies shall be filled in such a manner as may be provided by law. . . ."* (Emphasis added.)

The Legislature has made provisions for the filling of vacancies of recorders of deeds for fourth class counties, such as Washington County, in The County Code, Act of August 9, 1955, P. L. 323, Section 409, 16 P.S. 409, which reads as follows: "In case of a vacancy, happening by death, resignation or otherwise, in any county office created by the Constitution or laws of this Commonwealth, and where no other provision is made by the Constitution, or by the provisions of this act, to fill the vacancy, it shall be the duty of the Governor to appoint a suitable person to fill such office, who shall continue therein and discharge the duties thereof *for the balance of the unexpired term.* Such appointee shall be confirmed by the Senate if in session." (Emphasis added.)

To this point in the analysis of the applicable law, even the appellee agrees that the Governor could appoint Mr. Mazza to a term ending on the first Monday of January, 1974. However, appellee argues that because of Article IV, Section 8, and Article VII, Section 3 of the Pennsylvania Constitution, Section 409 of the County Code quoted immediately above is in direct irreconcilable conflict with the Constitution, and therefore should be declared inapplicable in this case. This argument fails to hold up under a close analysis of those Constitutional provisions.

Article IV, Section 8, deals with the appointing powers of the Governor and is found in those provisions pertaining to the Executive Branch of government. This section states in pertinent part: "(b) Except as may now or hereafter be otherwise provided in this Constitution as to appellate and other judges, he may, during the recess of the Senate, fill vacancies happening in offices to which he appoints by granting commissions expiring at the end of its session and fill vacancies happening in the office of Auditor General or State Treasurer or in any other elective office he is au-

thorized to fill. If the vacancy happens during the session of the Senate except as otherwise provided in this Constitution, he shall nominate to the Senate, before its final adjournment, a proper person to fill the vacancy. In the case of a vacancy in an elective office, *a person shall be elected to the office on the next election day appropriate to the office* unless the vacancy happens within two calendar months immediately preceding the election day in which case the election shall be held on the second succeeding election day appropriate to the office." (Emphasis added.)

Article VII, Section 3, found in the election provisions of the Pennsylvania Constitution reads: "All judges elected by the electors of the State at large may be elected at either a general or municipal election, as circumstances may require. All elections for judges of the courts for the several judicial districts, and for county, city, ward, borough, and township officers for regular terms of service, shall be held on the *municipal election day;* namely, the Tuesday next following the first Monday of November in each odd-numbered year, . . ." (Emphasis added.)

Appellee argues (1) that because Section 409 of the County Code says it is operative "where no other provision is made by the Constitution"; (2) that Article IV, Section 8 of the Constitution says persons filling vacancies "shall be elected to the office on the next election day appropriate to the office"; and (3) that Article VII, Section 3 says that all elections for county offices shall be held in odd-numbered years; therefore (4) Mazza could not hold office under the commission beyond the first Monday of January 1972; (5) the commission was in error; and (6) the Board should have declared a vacancy, permitting appellee to file her nomination petitions.

The flaw in the above argument is that nowhere in the Constitution or in the statutes is the word "appro-

priate" defined; and appellee assumes that it means the next "odd year" election. If that was the intent of the drafters of this Constitutional amendment, they would have used the words "municipal" or "odd year" which have definite meaning and which are used in many places in the Constitution in referring to those election years during which county officers are elected. Instead, the drafters at this place in the Constitution used the word "appropriate" and therefore logically something different was intended. Webster's Dictionary says "appropriate" means fitting or suitable. Giving the word its plain meaning, we hold that "appropriate" here means that election under the law which would be fitting to the end of the term of the commission, i.e., under Section 409 of the County Code.

We find no conflict or inconsistency between any of the Constitutional provisions cited by any of the parties, as they are applied to the facts of this case. The Constitution in Article IV, Section 8 and Article IX, Section 4, blend in a plan to provide for the filling of vacancies, the issuance of commissions, and the eventual election to fill vacated county offices. Section 409 of the County Code brings it all together to make the plan work, and it is not repugnant to any of the Constitutional provisions.

The lower court and the appellee refer to three cases in support of their position that the term of the commission should be extended only to the next odd-year election. A careful reading of these cases does not support this conclusion.

First, they rely primarily on the case of *Ritenour v. Peirce*, 442 Pa. 1, 272 A. 2d 900 (1971). That case involved a Clerk of Courts in a second class county, *not* a Recorder of Deeds in a fourth class county. The *Peirce* case is not applicable at all. There the Second Class County Code, Act of July 28, 1953, P. L. 723, §409, 16 P.S. 3409, specifically provides: "In case of a

vacancy happening by death, resignation or otherwise in any county office created by the Constitution or laws of this Commonwealth, and where no other provision is made by the Constitution or by the provisions of this act to fill the vacancy, it shall be the duty of the Governor to appoint a suitable person to fill such office, who shall continue therein and discharge the duties thereof until the first Monday of January *next succeeding* the first municipal election which shall occur two or more months after the happening of such vacancy. Such appointee shall be confirmed by the Senate if in session." (Emphasis added.) This erroneous conclusion by the appellee actually supports the appellant with the thought that the Legislature can provide for the filling of a vacancy to the next odd-year election if it desires to do so.

Next, the *Fayette County Recorder of Deeds* case is cited by the lower court (although the title of the case was not given, it is *Cavalcante v. Fayette County Board of Elections,* lower court decision dated September 25, 1965, affirmed *per curiam,* at 419 Pa. 610, 213 A. 2d 361) is not applicable because the specific issue raised in this case was not raised there. Although the Governor's commission in *Cavalcante* did provide for a term not to run to the end of the unexpired term, the main issue before the court was whether political parties could nominate candidates through party rules resulting in a nomination certificate under the facts of that case. There both political parties were in agreement that candidates should be offered at the impending general election in the fall of the year so that someone would be elected to fill a vacancy when the commission term ended.

Lastly, they refer to a "short term" appointment in Somerset County in 1970, but there was no question raised in any court. It is interesting to note that the lower court uses the term "short term" when referring

to the term of a commission which runs less than the unexpired term of the person who caused the vacancy.

The lower court in its order provided for the filing of nomination petitions by appellee and any other person who may have offered nomination petitions before March 9, 1971, for the office of Recorder of Deeds. Nowhere was any provision made for Mr. Mazza to file nomination petitions, or for that matter, any citizen who might have wanted to file if the necessary advertising had been made. We need not pass on this matter but merely note that such an order would raise serious questions under the Constitution or the statutes.

The election process in this country is one of the basic safeguards to political freedom under our constitutional form of government. The power of the Executive Branch of government to appoint governmental officials should always be secondary to the right of citizens to elect them. It is all the more imperative when the Constitution specifically reserves to the citizens the right to elect persons to specific offices that great caution be taken when determining the length of the term of office of those appointed by the Executive Branch.

Therefore, this Court does not take issue with the philosophy noted by the lower court that elections should be held as soon as reasonably possible after a vacancy occurs; but this control is within the purview of the power of the Legislature. In the case of a Recorder of Deeds of a fourth class county, the Legislature has directed that persons filling such vacancies should receive a term to fill the unexpired term of the person who caused the vacancy. Whether we believe it ought to be a shorter term is not really pertinent.

Therefore, on the basis of the analysis of the law set forth in this opinion, we reversed the lower court by our order dated May 6, 1971.